## APPEAL OF WERNECKE-SCHMITZ HARDWARE CO.

Docket No. 3599. Submitted July 11, 1925. Decided October 19. 1925.

> While net income may be proved by reconcilements of surplus alone, the correctness of that method as applied to any case depends upon the correctness of the balance sheets used in the analysis of surplus.

*E. W. Wallick, Esq.*, for the taxpayer.
*Blount Ralls, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of deficiencies in income and profits taxes for the years 1919 and 1920 in the amounts of $1,034.30 and $8.07, respectively. At the hearing of the appeal the taxpayer introduced in evidence the revenue agent's report, which

was admitted by the Commissioner to have formed the basis of his determination of the deficiencies hereinabove mentioned. The taxpayer rested its case upon the alleged patent errors upon the face of the revenue agent's report.

### FINDINGS OF FACT.

The taxpayer is a Wisconsin corporation engaged in the retail hardware business in Manitowoc. The business is conducted along the lines usually employed in such an enterprise, and purchases and sales are made both for cash and on time. The accounting records maintained by the taxpayer are single entry in character and consist of a cashbook, accounts receivable ledger, accounts payable file, and memorandum income and expense accounts.

All cash received and disbursed was recorded in the cashbook. The total daily sales were recorded in a memorandum record, while the individual credit sales were charged directly to the customers' accounts in the accounts receivable ledger. Credit purchases were recorded in a memorandum record, and the invoices were filed in an accounts payable folder for subsequent payment. Expenses were recorded in a memorandum record as paid.

No controlling account was maintained of either accounts receivable or accounts payable. As payments were received on outstanding accounts, the ledger pages were merely removed from the accounts receivable ledger and filed with the closed accounts. Worthless and uncollectible accounts were likewise removed from the accounts receivable ledger and not even a memorandum record was ever made of the amounts of such accounts. Allowances on sales were never completely recorded, and generally the amount of the allowance was credited directly to the customer's account without making any memorandum record thereof. The accounts receivable ledger and the cash records were the only existing records from which the true sales could be determined.

Similarly, there was no way of insuring the recording of all purchases in the memorandum account before the invoices were filed in the accounts payable file. This file was the only existing record from which the true cost of purchases could be determined.

The returns of the taxpayer for the years 1919 and 1920 were prepared on the accrual basis, but were admittedly inaccurate and did not agree with the books. It is conceded by the taxpayer that its tax liability should not be computed on the basis of the facts shown in those returns.

At the close of each calendar year the taxpayer prepared balance sheets from the records just described.

The analysis of surplus shown under the respective balance sheets showed a book income for 1919 and 1920 of $7,387.06 and $8,673.71,

respectively. Federal taxes were paid for those years in the amounts of $260.32 and $1,108.54, respectively, and donations in the amounts of $49.50 and $107.25, respectively. Betterments and capital expenditures, in the respective amounts of $799.10 and $492.46, were erroneously charged off for 1920.

On March 18, 1924, an examining revenue agent completed an examination of the records of the Wernecke-Schmitz Hardware Co. for the years 1919 and 1920. In computing invested capital he used the balance sheets previously referred to. He also used the income shown by these balance sheets as the basis for his taxable net income. He increased the income shown by the balance sheets by the items previously outlined in this appeal and conceded by the taxpayer, and also by the difference between the amounts of sales, purchases and expenses shown by the memorandum records and the net income shown by the original returns. As a result of these adjustments, the examining officer determined that the taxable net income for the years 1919 and 1920 amounted to $12,826.82 and $9,862.96, in lieu of the amounts of $7,696.88 and $11,181.06 computed as net income by reconcilements of surplus.

Respecting balance sheets, the examining revenue agent states that "no balance sheets are submitted except as work sheets. The files indicate copies were filed with returns, and the extra work of typing is eliminated as explained elsewhere. They can not be verified."

Respecting accounts receivable, the revenue agent states that "the corporation could not prove the correctness of its balance of $27,-263.43, accounts receivable as of January 1, 1920, although given an opportunity to do so. The examining officer tested the daily record, and such days as were checked corresponded with the daily charge slips. The officers advanced as a possible reason for the discrepancies that it may have dropped some accounts as uncollectible, but in the absence of more specific data as to what accounts were worthless, no allowance therefor was entertained."

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The Board has heretofore had occasion to consider whether net income may be proven by reconcilements of surplus alone. As a matter of accounting theory, there can be no question that the method is correct. But its correctness as applied to any case depends entirely upon the correctness of the balance sheets involved in the analysis of surplus. In other words, if the balance sheets are accurate, if capital additions and distributions are taken into account,

if proper adjustment is made for dividends, and similar withdrawals, then the difference between surplus at the beginning and at the end of the year correctly reflects the income. But. if any item on the balance sheet, either at the beginning or at the end of the year, should be erroneous, that error may affect surplus either at the beginning or at the end of the year, and the entire computation becomes worthless. We have so held in the *Appeal of Bruce & Human Drug Co.*, 1 B. T. A. 342, and in the *Appeal of Gaukler & Stewart*, 1 B. T. A. 578.

The taxpayer in this appeal has undertaken to rely solely upon what it regards as patent errors upon the face of the revenue agent's report, but offered no proof that the findings were erroneous. An examination of that report indicates a painstaking effort to arrive at the truth under difficult conditions. The revenue agent did not rely upon the balance sheets as being correct but on the other hand indicated clearly their shortcomings. Such being the case, we are not disposed to disturb his findings or the determination of the Commissioner based thereon.